IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
HOWARD P. STRAIN,                 )
                                  )
            Plaintiff,            )   Civil Action No. 04-1581
                                  )
    v.                            )
                                  )   Judge Lancaster
BOROUGH OF SHARPSBURG,            )   Magistrate Judge Caiazza
PENNSYLVANIA, a Municipal         )
Entity, and RICHARD C. PANZA,     )
JOSEPH P. PANZA, LARRY            )
STELITANO, EILEEN RAPINO,         )
VINCENT F. SACCO, ALBERT          )
"PAT" ASTORINO, MARIO FERRARO,    )
ROXANE MAGNELLI, and ROBERT       )
STAPF, in their official and      )
individual capacities,            )
                                  )
            Defendants.           )
```

## I.  RECOMMENDATION

For the reasons stated below, it is respectfully recommended that the Defendants' Motion to Dismiss (Doc. 7) be granted in part and denied in part.  Specifically, it is recommended that the Plaintiff's federal causes of action be dismissed with prejudice and that the remaining state-law claims be dismissed for lack of jurisdiction without prejudice to refiling in the appropriate state court.

## II.  REPORT

**BACKGROUND**

Howard P. Strain ("the Plaintiff") commenced this civil action on October 15, 2004.  *See generally* Compl. (Doc. 1). Named as Defendants are the Plaintiff's former employer, the

Borough of Sharpsburg, Pennsylvania ("the Borough"); the individual members of the Borough's Council, including Richard C. Panza, Joseph P. Panza, Larry Stelitano, Eileen Rapino, Vincent F. Sacco, Albert "Pat" Astorino ("Astorino"), and Mario Ferraro; the Borough's Treasurer, Roxane Magnelli; and the Borough's Superintendent of Public Works, Robert Stapf.  *See id.* ¶¶ 2-4. The Plaintiff generally alleges that the Defendants engaged in a course of unlawful conduct to deny him health insurance benefits and supplemental retirement benefits ("the Benefits") purportedly earned during his employment with the Borough.  *See generally id.* ¶¶ 8-56.  The Defendants' conduct allegedly entailed filing false criminal charges against the Plaintiff based on the theft of a lawnmower and manufacturing "cause" – through a laundry list of alleged personnel violations – to suspend and terminate him.  *See id.*

The nine-count Complaint alleges the following federal constitutional claims against the Defendants under 42 U.S.C. Section 1983 ("Section 1983"):

> "[A]n unconstitutional impairment of his contractual right to receive [his] [Benefits]" in violation of Contract Clause of the United States Constitution, U.S. Const. art. I, § 10.  *See* Count I;
>
> Denial of procedural due process, substantive due process, and equal protection under the Fourteenth Amendment of the United States Constitution.  *See* Counts II, III, IV & V; and
>
> Retaliation for protected speech under the First Amendment of the United States Constitution, based on

2

remarks made by the Plaintiff's attorneys on the
Plaintiff's behalf at a meeting of the Borough's
Council following the Plaintiff's suspension. *See*
Count VI; *see also* Compl. ¶ 35-40.

The Complaint also alleges a violation of the Public Health Services Act ("the PHSA"), 42 U.S.C. Section 300bb-1, *et seq.*, *see* Count VII; a state-law claim of civil conspiracy, *see* Count VIII; and breach of contract, *see* Count IX.

On December 14, 2004, the Defendants filed a Motion to Dismiss ("the Defendants' Motion"; Doc. 7). The briefing has come to a close, and the Defendants' Motion is now ripe for adjudication.

**ANALYSIS**

**1.   The Plaintiff Has Not Stated a Federal Cause of Action**

The Plaintiff's Section 1983 claim based on the Contract Clause[1] fails to state a claim upon which relief may be granted. A violation of the Contract Clause "must implicate an act of the legislature." *See* Soppick v. Borough of West Conshohocken, 2004 WL 739945, *2 (E.D. Pa. Mar. 8, 2004); *see also* Price v. Pa. Prop. & Ca. Ins. Co. Ass'n, 158 F.Supp.2d 547, 551 (E.D. Pa. 2001) (To state a claim under the Contract Clause, "the obligation of a contract . . . must have been impaired . . . by a law of the State" – *i.e.*, "the prohibition is aimed at the

---

[1] The Contract Clause provides, in relevant part, that "[n]o State shall enter into any ... Law impairing the Obligation of Contracts . . . ." *See* U.S. Const. art. I, § 10.

3

legislative power of the State.") (emphasis added; citation and internal quotations omitted).[2]

Here, the Defendants' actions in terminating the Plaintiff and/or "depriving [the] Plaintiff of previously vested contractual rights" are purely administrative, and not legislative, in nature. *See* Count I; *see also* Soppick, 2004 WL 739945 at *2 (dismissing Section 1983 alleging violations of Contract Clause because defendant borough's "[e]nforcement of zoning regulations [wa]s an administrative, not legislative, act") (citations omitted); Transp. Workers Union of Am., Local 290 v. SEPTA , 1996 WL 420826, *3 (E.D. Pa. July 25, 1996) (SEPTA resolution modifying an employee benefit plan did not constitute a legislative action for purposes of the Contract Clause); *cf. also* Meding v. Hurd, 607 F.Supp. 1088, 1110 n.28 (D. Del 1985) (actions of Town Council in terminating police chief were ministerial; fact that termination was achieved by a vote of council did not make actions legislative).

Moreover, a "simple breach or interference in a contract" by a government entity acting under color of state law, as is alleged in this instance, "does not [in itself] constitute an impairment within the meaning of the Contract Clause." *See*

---

[2] Legislative actions include not only statutes enacted by the state legislatures, "but also by-laws and ordinances of municipal corporations that constitute an exercise of legislative power delegated by the legislature to the [municipal corporation] . . . , having all the force of law within the limits of the municipality." *See id.*

4

Eberts v. Wert, 1993 WL 304111, *5 n.3 (E.D. Pa. Aug. 9, 1993) (citations omitted).

The Plaintiff has failed to identify a protected property or liberty interest necessary to support his due process claims. *See* Hill v. Borough of Kutztown, 2005 WL 67079, *8 (E.D. Pa. Jan. 12, 2005) ("[A] plaintiff who brings a [Section] 1983 suit based on a violation of the due process clause must therefore allege and prove [among other things] . . . that he was deprived of a protected liberty or property interest . . . .") (emphasis added; citing *inter alia* Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir.1989)).

With respect to potential property interests, the Plaintiff maintains that he has alleged "a vested contractual right to receive the [Benefits] . . . [,] [which is] a form of property . . . protected by the Due Process Clause." *See* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. 10; hereinafter cited as "Pl.'s Br.") at 3 (citations omitted).

Not every contract, however, automatically "results in a protected property interest." *See* Boyd v. Rockwood Area Sch. Dist., 105 Fed.Appx. 382, 386 (3d Cir. July 22, 2004) (citation omitted). Rather, a contract only creates a protected property interest if it: (1) confers a protected "status" – *e.g.*, a quality of permanence or extreme dependence; or (2) provides that it can only be terminated for cause. *See id.* (citation omitted);

5

Myers v. Penn Township Bd. of Comm'rs, 50 F.Supp.2d 385, 390 (M.D. Pa. 1999).  As explained by the Unites States Court of Appeals for the Third Circuit ("the Third Circuit Court"):

> "[I]f every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities. . . . [S]uch a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause."

*See* Reich v. Beharry, 883 F.2d 239, 242 (3d Cir.1989) (citations omitted).

Neither of these two special circumstances have been alleged in this instance; the Plaintiff has therefore failed to state a due process claim based on a protected property interest.  *Accord* Boyd, 105 Fed.Appx. at 386 (holding no protected property interest in retirement healthcare benefits); Pappas v. City of Lebanon, 331 F.Supp.2d 311, 319-320 (M.D. Pa. 2004) (no property interest in pension benefits).

The Plaintiff makes no effort in his brief to articulate how a liberty interest might be implicated in this instance.  *See* Pl.'s Br. at 1-14 (omitting any reference to potential due process liberty interests).  For good reason, perhaps, because such a claim is deficient on at least two levels.  First, the Plaintiff has not alleged that the Defendants published or disseminated any stigmatizing information to "the public." *Compare* Count III *with* Hill v. Borough of Kutztown, 2005 WL

6

67079, *10 n.5 (E.D. Pa. Jan. 12, 2005) (to state liberty interest based on "defamation in the course of forced separation from public employment, the allegedly stigmatizing information must have been published or disseminated by the employer to the public") (citations and internal quotations omitted).  Second, to the extent that the Defendants' alleged "false and defamatory representations of fact to law enforcement authorities" can be construed as having been published and having caused damage to the Plaintiff's reputation, the Plaintiff has not alleged a "concomitant infringement of a protected right or interest" that is guaranteed by state law or the Constitution.  *Compare* Count III *with* Graham v. City of Philadelphia, 402 F.3d 138, 142 (3d Cir. 2005) ("[A] plaintiff must show a stigma to his reputation plus some concomitant infringement of a protected right or interest.") (citations omitted) *and* Hill, 2005 WL 67079 at *9-*10 (dismissing due process claim based on liberty interest because loss of public employment was not a protected right or interest under state law or the Constitution).

    The Complaint does not allege a "fundamental" property right warranting substantive due process protection.  *See* Nicholas v. Pennsylvania State University, 227 F.3d 133, 140 (3d Cir. 2000) (to state a substantive due process claim, a plaintiff must allege the deprivation of a property interest of a "particular quality" – *i.e.*, an interest that "fundamental" under the United States Constitution).  The Third Circuit Court has held that

7

there is no fundamental property interest in continued public employment.  *Compare* Count IV *with* <u>Nicholas</u>, 227 F.3d at 142-43.  Nor is there any fundamental right to state-created employment benefits.  *Compare* Count IV *with* <u>Homar v. Gilbert</u>, 63 F.Supp.2d 559, 574 (M.D. Pa. 1999) ("[S]tate-created employment benefits . . . are not 'fundamental' rights created by the Constitution, and therefore they do not enjoy substantive due process protection.") (citation and internal quotations omitted).

As to the Plaintiff's equal protection claim, several courts, including this one, have expressed doubts as to the viability of a "class of one" theory in the employment context. *See generally* <u>Kelley v. City of Albuquerque</u>, -- F.Supp.2d --, 2004 WL 3403116, *25 (D.N.M. Dec. 30, 2004) (listing cases); *see also* <u>Welsh v. Montour Sch. Dist.</u>, Civ. A. No. 02-1094 (Report and Recommendation dated Feb. 27, 2004) (Caiazza, Mag. J.) at 33-34, *adopted* (W.D. Pa. March 31, 2004) (Flowers, J.).  If such a theory were indulged, one district court explained, then:

> any public employee convinced that someone similarly situated is being treated more favorably could sue his or her employer under the Fourteenth Amendment for a violation of equal protection.  Since practically every employee, public or private, is bound to be convinced at some point that he or she is getting the short end of the stick, it is not hard to imagine the bee hive of constitutional litigation that would be generated by this variant of the "class of one" doctrine. It seems unlikely that the Supreme Court intended such a dramatic result in its *per curiam* opinion [establishing the doctrine].

*See* <u>Campagna v. Commonwealth of Mass. Dep't of Envtl. Prot.</u>, 206

F.Supp.2d 120, 127 (D. Mass. 2002).

The undersigned need not resolve this doctrinal issue, however, because the Plaintiff has failed to establish that "similarly situated" individuals were treated differently. *See generally* Williams v. LaCrosse, 2005 WL 927112, *7 (E.D. Pa. Apr. 20, 2005) (to succeed on a class-of-one equal protection theory, "a plaintiff must demonstrate [among other things] that . . . [the] defendants . . . intentionally treated [the] plaintiff in a manner that was irrationally and arbitrarily different from others similarly situated . . . .") (citing *inter alia* Eichenlaub v. Township of Indiana, 385 F.3d 274, 286-87 (3d Cir. 2004)); *see also* Campagna, 206 F.Supp.2d at 127-128 (dismissing class-of-one claim because complaint did not adequately allege that plaintiff as treated differently from others similarly situated).

Astorino is not a fair co-comparator. *See generally* Count V. Unlike the Plaintiff, he was not charged with a crime; nor was he terminated by the Borough. *See id.* (alleging that "no action" was taken against Astorino and that he resigned his post as Chief of Police). Nor is there any suggestion in the Complaint that the Borough Council had presented Astorino with multiple personnel violations as it had with the Plaintiff. *See* Compl. ¶¶ 32, 40. Accordingly, it cannot be said that Astorino is "similarly situated" to the Plaintiff with respect to his potential eligibility to receive benefits. *See* Hicks v. Jackson, -- F.Supp.2d --, 2005 WL 1484497, *10 (N.D. Ala. June 23, 2005)

("The burden of identifying similarly situated individuals is a heavy one[:] . . . [i]t is clear that similarly situated individuals must be very similar indeed.") (citations and internal quotations omitted); *see also* Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (in the employment context, "similarly situated" individuals must be similar "in all relevant respects") (citation and internal quotations omitted).

The Plaintiff does not allege that he personally engaged in any protected speech with respect to his First Amendment retaliation claim; rather, the claim is based the statements made my two attorneys who "attended a Council meeting on [the] Plaintiff's behalf" during his suspension.  *See generally* Count VI; Compl. ¶¶ 35-47.  The Complaint alleges that the speech made by the attorneys "asserted that the Borough had unconstitutionally denied [the] Plaintiff due process of law . . . [,] that [the] Plaintiff had been singled out for mistreatment, and that [the] Borough Council's actions against [the] Plaintiff were personally and politically motivated."  *See id.* ¶ 36.

As a threshold matter, the Plaintiff would appear to lack standing to bring a Section 1983 claim based on the speech of other individuals.  *See* Moran v. City of New Rochelle, 346 F.Supp.2d 507, 512 (S.D.N.Y. 2004) ("Generally speaking, individuals have no standing to assert [Section] 1983 claims to

vindicate the rights of a third party and, as such, cannot assert claims of retaliation against speech by another individual.") (citing Morris v. Lindau, 196 F.3d 102, 113 (2d Cir.1999)).  If there is any legal authority to support the Plaintiff's "agency" theory of standing, counsel has failed to cite it.  *See* Pl.'s Br. at 6; *see also* Awala v. State of N.J. Dept. of Corr., 2005 WL 1522170, *3 (D.N.J. June 24, 2005) ("The plaintiff bears the burden of establishing standing.") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

Even if the court were to assume that the attorneys "stood in [his] shoes," the Plaintiff has failed to demonstrate that the speech touches on a "matter of public concern."  *See* Pl.'s Br. at 6; *see also, e.g.,* Williams v. LaCrosse, 2005 WL 927112, *4 (E.D. Pa. Apr. 20, 2005) ("speech related to matters involving a personal grievance . . . [does not] address[] a matter of public concern" and is therefore not protected under the First Amendment) (citation omitted).  That is, the speech was not an attempt to reveal any official malfeasance or "implicate any systemic wrongdoing or breaches of public trust"; instead, it was motivated by the Plaintiff's own personal interests in maintaining his employment and related exclusively to the conditions surrounding his own suspension.  *Compare* Compl. ¶¶ 35-47 *with* Cataldo v. Moses, 2005 WL 705359, *13 (D.N.J. Mar. 29, 2005) *and* Poli v. SEPTA, 1998 WL 405052, *8 (E.D. Pa. July 7, 1998); *see also* Versarge v. Township of Clinton N.J., 984 F.2d

11

1359, 1364-65 (3d Cir. 1993) (a speaker's motivation is relevant in determining "whether the speaker is speaking as citizen upon matters of public concern or as a volunteer upon matters only of personal interest") (citation and internal quotations omitted). The Plaintiff's attempts to characterize these statements as broader than mere personal grievances do not mandate a different result.  *See* Poli, 1998 WL 405052, *8 ("The focus of the Court's inquiry . . . is not how [the plaintiff] characterized his speech for the purposes of [a] law suit[;] [r]ather, the Court must examine the content, form, and context of . . . [the] speech as alleged to determine whether his speech was a matter of public concern.").

The PHSA provides for "temporary continued health insurance to beneficiaries covered by a state plan who would otherwise lose coverage by virtue of a 'qualifying event[]' [such as termination of employment]."  *See* Bates v. Hess, 1994 WL 854963, *7 (M.D. Pa. Aug. 4, 1994) (citing Williams v. New Castle County, 970 F.2d 1260, 1264 (3d Cir.1992)).  Assuming an employee elects continued coverage within the statutorily prescribed period, "the state must permit the employee to pay a premium and participate in group health insurance for a limited time after termination."  *See* Bates, 1994 WL 854963 at *7 (emphasis added; citations omitted).  Nothing in the statute, however, obligates the government actor to pay the premiums on the beneficiary's behalf.  *Cf. id.*

There are no allegation in this instance that the Defendants failed to notify the Plaintiff of his right to elect coverage; that he would have elected coverage had he been given notice; or that he would have paid the requisite premiums to maintain coverage but was thereafter denied coverage. Rather, the Plaintiff's cause of action is based exclusively on the allegation that the Defendants refused to pay the premiums on his health insurance. *See generally* Count VII. The Plaintiff's claim is not actionable under the law and otherwise fails to state a claim upon which relief may be granted.[3]

For the reasons states above, the Plaintiff's federal causes of action should be dismissed.

### 3. The Court Lacks Jurisdiction Over the Plaintiff's Remaining State-Law Claims

As the Plaintiff has failed to state a federal cause of action, the District Court should decline jurisdiction over the Plaintiff's civil conspiracy and breach of contract claims and dismiss them without prejudice to refiling in the appropriate state court. *See* 28 U.S.C. § 1367; *see also* Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284-85 (3d Cir. 1993) (district court has discretion to decline to exercise supplemental jurisdiction when it has disposed of all claims over which it had original jurisdiction).

---

[3] The undersigned recognizes that the Plaintiff appears to have abandoned this claim altogether; moreover, his brief makes no attempts to clarify or otherwise defend it. *See generally* Pl.'s Br.

### III.  **CONCLUSION**

For the reasons stated above, it is recommended that the District Court grant in part and deny in part the Defendants' Motion to Dismiss (Doc. 7).  Specifically, the District Court should dismiss the Plaintiff's federal causes of action with prejudice and dismiss the remaining state-law claims for lack of jurisdiction without prejudice to refiling in the appropriate state court.

In accordance with the Magistrates Act, 28 U.S.C. Section 636(b) (1) (B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by August 4, 2005.  Response to objections are due by August 15, 2005.

July 19, 2005

*[signature]*
Francis X. Caiazza
U.S. Magistrate Judge

cc:

Charles A. Lamberton, Esq.
Lamberton Law Firm, LLC
The Gulf Tower, Suite 1705
707 Grant Street
Pittsburgh, PA 15219

Patricia A. Monahan, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin, P.C.
600 Grant Street,
2900 US Steel Tower
Pittsburgh, PA 15219