```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA

                                  )
HOWARD P. STRAIN,                 )
                                  )   Civil Action No. 04-1581
            Plaintiff,            )
    v.                            )
                                  )
BOROUGH OF SHARPSBURG,            )   Judge Lancaster
PENNSYLVANIA, a Municipal         )   Magistrate Judge Caiazza
Entity, and RICHARD C. PANZA,     )
JOSEPH P. PANZA, LARRY            )
STELITANO, EILEEN RAPINO,         )
VINCENT F. SACCO, ALBERT          )
"PAT" ASTORINO, MARIO FERRARO,    )
ROXANNE MAGNELLI, AND ROBERT      )
STAPF,in their official and       )
individual capacities,            )
                                  )
            Defendants.           )
```

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

This matter, initiated by Howard P. Strain ("Strain" or "the Plaintiff"), returns to the court on remand from the Court of Appeals for the Third Circuit. Adopting the initial Report and Recommendation (Doc. 11) made by the magistrate judge with respect to the original complaint, the District Court entered an Order (Doc. 13) dismissing Strain's federal claims for failure to state a cause of action. The state claims were dismissed without prejudice, preserving Strain's option to refile in state court. Strain appealed. The Court of Appeals vacated the Order of the District Court, remanding this case to permit Strain to file an Amended Complaint. He did so (Doc. 19). The Defendants then filed a Motion to Dismiss the Amended Complaint (Doc. 21), again contending that Strain had failed to state a federal cause of action. It is this second Motion to Dismiss that the court addresses. The court respectfully recommends that the Plaintiff's

motion be granted in part, and denied in part.

## II. Factual Background

Strain was hired by the Borough of Sharpsburg ("the Borough")in 1973. Every indication is that this employment relationship was mutually satisfactory for some thirty years. Strain had a blemish-free employment record and was promoted to Superintendent of Public Works for the Borough in 1997. Id. at 4. He alleges that "his contract with the Borough" provided him with a good hourly wage, and family health care coverage pursuant to a Borough-sponsored plan. (Doc. 19 at 4). It is uncontested that one of the benefits of Strain's employment was the right to receive post-retirement health care benefits. "These benefits provided [Strain] with family health care coverage at Borough expense from the date of his retirement though his 65th birthday." Id. at 5. Once he turned 65, the Borough would "cover[ ] his enrollment in a Medicare Supplemental Health Plan." Id. Strain's benefits vested in the fall of 2003.

According to Strain, at about the time that his rights in the medical plan vested, his equable relationship with the Borough came to a bitter end. He alleges that trouble began when "one or more of the Defendants, acting solely for personal and/or political reasons," schemed to terminate his employment and his right to receive health care benefits. (Doc. 19 at 5.) He claims that in furtherance of this scheme, the Defendants sullied his employment record in order to "justify" adverse employment action, pressed criminal charges for theft of an old and inoperative lawn mower that they knew to be baseless, and falsely

accused him of committing seventeen personnel violations. On the basis of these false charges, Strain was suspended from work from December 22, 2003 through January 30, 2004, without pay.

In January 2004, Strains's criminal defense attorney met with the Borough Board in an attempt to smooth troubled waters. He failed. Strain's attorney then took the position that the Defendants had violated his client's due process rights, and had done so because of "unlawful political and personal animus." (Doc. 19 at 7). The Defendants responded by filing 43 additional disciplinary charges.

Again, Strain attempted to appease the Defendants, agreeing to abandon all claims that he might have against them in return for the payment of retirement benefits and dismissal of the criminal charges. The Defendants refused to pay the benefits, and notified Strain that his employment would be terminated on January 4, 2005. They threatened to file four additional disciplinary charges, and additional fraud-related criminal charges because Strain allegedly neglected to notify them that his son had become ineligible for health benefits. Id.

In mid-June 2004, Strain gave the Defendants formal notice of his intent to retire voluntarily from his position as Supervisor of Public Works. He also filed an application for benefits with the Pennsylvania Municipal Retirement Board ("PMRB"). Defendant Magnelli allegedly interfered in the state administrative process when she sought to delay Strain's benefits by misrepresent[ing] to the PMRB that the Defendants were in active litigation with Strain.

In mid-September 2004, Borough Council voted to terminate

Strain's employment retroactive to February 2004, and denied that it had further obligation to pay health benefits for Strain or his family. Id. at 13. Strain filed suit in October 2004.

### III. The Amended Federal Claims

In the Amended Complaint, Strain sets out three federal claims brought pursuant to 42 U.S.C. § 1983. He contends first that by retroactively denying his right to health care benefits, the Defendants caused him to suffer an impairment of contract in violation of Article I Section 10 of the U.S. Constitution. Strain also alleges that the Defendants violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The court will address these claims seriatim, turning first to the alleged impairment of contract.

#### A. The Contract Clause

Article I, Section 10 of the United States Constitution directs, among other things, that no state shall pass any law impairing the obligation of contracts. Strain contends that this clause was violated when the Borough acted to deprive him of a vested right to post-retirement benefits. This claim was raised in Strain's original Complaint, and is substantially unchanged. The court's disposition of this issue is similarly unchanged.

Strain has failed to state a Section 1983 claim based on the Contracts Clause. "The prohibition is aimed at the legislative power of the state." Price v. Prop. & , 158 F. Supp.2d 547, 551 (E.D. Pa. 2001). In order to determine whether a plaintiff has stated a claim under the Contracts Clause, "we . . . ask whether

[a] change in state law has 'operated as a substantial impairment of a contractual relationship.'" General Motors Corp.v. Romein, 503 U.S. 181, 186 (1992)(quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978)).

Even if the court assumes, arguendo, that Strain has alleged a contractual relationship with the Defendants, he has failed to allege that the relationship was affected by any legislative or quasi-legislative act. Citing Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82 (3d Cir. 1998), he contends that executive action may also be the basis for a claim under the Contracts Clause. Strain misreads Larsen.

Larsen was a Pennsylvania Supreme Court Justice when his retirement benefits vested in 1989. At the time of the vesting, controlling case law established that judicial officers removed from office due to misconduct retained the right to receive benefits. In 1993, however, the state constitution was amended, requiring that judicial officers removed from judicial office forfeit the right to benefits. When Larsen was removed from office in 1994, the 1993 amendment was invoked to deny him the right to receive retirement benefits. Larsen filed suit alleging that the denial of benefits violated his rights under the Contracts Clause. The Court of Appeals for the Third Circuit agreed, holding that Larsen's entitlement to benefits should have been determined with reference to the law as it stood when his rights vested, in 1989. The 1993 constitutional amendment did not provide justification for withholding Larsen's retirement benefits. The "attempt to divest previously vested rights of a public . . . official by 'subsequent legislative judgment' was

. . . constitutionally infirm." Commonwealth ex rel Zimmerman v. Officers & Employees Retirement Bd., 50 Pa. 219,(1983)(emphasis added)(quoted in Larsen, 154 F.3d at 89).

Strain has not alleged that his denial of benefits was based on or effected by a change in a law, bylaw, ordinance, regulation or any other arguably legislative product or process. He contends instead that the denial of benefits was based on a Borough decision motivated by political spite and personal animus. The Borough's administrative decision, reprehensible though it may have been, did not violate the Contract Clause.

The Defendants' motion to dismiss Count I of the Amended Complaint for failure to state a claim should be granted.

### B. Substantive Due Process

In Count II of the Amended Complaint, Strain alleges that his substantive due process rights were violated by the Defendants' conduct. He bases this claim on the Defendants' alleged violation of a list of federal and state statutes, and fails to allege that he was deprived of a liberty or property interest. This count would have been wholly insufficient to state a substantive due process claim had it not been for the single sentence included at the end of Paragraph 38 of the amended complaint: "In its totality, Defendants' entire course of conduct against Plaintiff, as set forth in [the complaint as a whole] shocks the conscience."

This sentence implicates a body of case law establishing that: "When executive action is at issue, a violation of the

-6-

Fourteenth Amendment right to substantive due process may be shown by conduct that 'shocks the conscience.'" A.M. v. Luzerne County Detention Center, 372 F.3d 572, 579 (3d Cir. 2004) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998). The "core of the concept" of due process is "protection against arbitrary action" and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" United Artists Theater Circuit, Inc. v. Township of Warrington, Pa., 316 F.3d 392, 399 (3d Cir. 2003)(quoting Lewis, 523 U.S. at 845-46). Arbitrary conduct on the part of the Defendants is the gravamen of Strain's Complaint. In his brief, Strain alleges that the Defendants' conduct violated "his fundamental right to be free from malicious, wanton and arbitrary government actions taken for the purpose [of] harming a citizen of the United States."

Because the court evaluates Strain's Complaint in the context of a Motion to Dismiss, its focus is on the Complaint. Strain's substantive due process claim should be dismissed only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." D.P. Enters., Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984). The court's obligation, then, is to decide whether, based on the Complaint as a whole, the conduct described by the plaintiff could reasonably be characterized as arbitrary, irrational, and egregious enough to shock the conscience.

Whether executive conduct "shocks the conscience" depends on "an exact analysis of [the] circumstances" in a given case. Lewis, 523 U.S. at 850.[T]he measure of what is conscience

-7-

shocking is no calibrated yardstick . . . ." Id. at 847. This is not to say that courts and juries are left entirely without guidance. The Supreme Court has emphasized that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Id. at 849. Conscience shocking behavior "is at the other end of the culpability spectrum." Id. "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id.

In Ziccardi v. City of Philadelphia, 288 F.3d 57 (3d Cir. 2002), the Court of Appeals for the Third Circuit discussed in detail the intent required to support a substantive due process claim based on allegations of conscience shocking behavior. Citing its decision in Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir. 1998) the Court explained that where an executive decision must be made under pressure - in a matter of seconds, minutes, or even hours - a plaintiff alleging a violation of substantive due process is required to prove "that the defendants consciously disregarded, not just a substantial risk, but a great risk [of] serious harm." Ziccardi, at 66. In contrast, in Nicini v. Morra, 212 F.3d 798 (3d Cir. 2000), the Court of Appeals imposed a less stringent burden of proof. Where the decision maker had time to make unhurried judgments, a plaintiff need show only deliberate indifference in order to establish conscience shocking behavior.

With these guidelines in mind, the court has examined the

Amended Complaint, and concludes that Strain's substantive due process allegations are adequate to survive the Motion to Dismiss. In the body of the Amended Complaint, Strain contends that after his retirement benefits vested and he announced his plans to retire early, the Defendants knowingly filed false criminal charges against him, imposed sixty disciplinary violations where there had been none during Strain's prior thirty years of employment, suspended him without pay based on pretextual personnel violations, threatened additional criminal charges if he did not relinquish his claim to benefits, made false misrepresentations to the PMRB in order to interfere with his application for retirement benefits, and, in September 2004, terminated his employment retroactively to February 2004 in order to avoid paying benefits. The allegations, viewed in the light most favorable to Strain, show, at the very least, an abuse of power and position. The court is unable to say that Strain cannot demonstrate that the Defendants engaged in deliberately indifferent conscience-shocking conduct.

The Defendants' Motion to dismiss this claim should be denied.

### C. Equal Protection

The Supreme Court has held that a "class of one" can attack an executive's intentionally unequal treatment if it is "irrational and wholly arbitrary.'" Village of Willowbrook v. Olech, 528 U.S. 562, 564, 565,(2000)(internal citations omitted)(per curiam). "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the

State's jurisdiction against intentional and arbitrary discrimination . . . ." Id. at 565.

A plaintiff asserting a "class of one" claim must show that: (1) defendants, acting under color of state law, intentionally treated plaintiff differently from others similarly situated; and (2) there was no rational basis for the difference in treatment. Id.; Jackson v. Gordon, 145 Fed. Appx. 774, 776-77 (3d Cir.2005); Willis v. Town of Marshall, 426 F.3d 251, 263-64 (4th Cir.2005); Montanye v. Wissahickon School Dist., 327 F. Supp.2d 510, 518 (E.D.Pa.2004).[1]

This equal protection theory is most often applied in what the Court of Appeals for the Seventh Circuit has described as a "paradigmatic case," where a public official, with no conceivable basis for his action, penalizes a hapless private citizen." Lauth v. McCollum, 424 F.3d 631, 633 (7th Cir. 2005). Id. Strain's allegations, considered in isolation, place him very close to the paradigm.

---

[1] Several Courts of Appeals have allowed plaintiffs proceeding on a class of one basis to demonstrate that the governmental action was motivated by animus or to show that the action lacked a rational basis. See, e.g., Warren v. City of Athens, 411 F.3d 697, 711 (6th Cir.2005); Tapalian v. Tusino, 377 F.3d 1, 5-6 (1st Cir. 2004) (recognizing potential equal protection violation based on "malice or bad faith"); Squaw Valley Development Corp. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004) ( finding that "[w]here an equal protection claim is based on selective enforcement of valid laws, a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for an impermissible motive.") (internal citations omitted); DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir.2003) (holding that allegation of impermissible motive and animus is sufficient to allege equal protection violation); Bartell v. Aurora Public Schools, 263 F.3d 1143, 1149 (10th Cir.2001)(denying plaintiff's equal protection class of one claim because no showing of spite). The Court of Appeals for the Third Circuit, however, demands a more rigorous showing. It has adopted the more rigorous "rational basis" test rather than the more lenient "motivated by animus" standard. Jackson v. Gordon, 145 Fed. Appx. 774, 777(3d Cir. 2005).

The Defendants argue that Strain has not stated an equal protection claim because he has failed to identify with specificity others similarly situated who were treated differently. According to the Defendants, Strain must identify individuals who received post-retirement benefits despite pending criminal charges and dozens of personnel violations at the time of retirement. This is asking too much. Strain has made it clear that both the criminal charges and the disciplinary violations are elements of what he alleges to have been an irrational abuse of power directed at him alone. If Strain could identify Borough employees with an identical history of treatment at the hands of the Borough, he would defeat his own "class of one" equal protection claim.

Strain will, of course, be held to a significantly higher standard of proof with respect to identification and discussion of similarly situated Borough employees if this matter proceeds to summary judgment. He will also need to establish that there was no rational basis for any difference in treatment. This is a substantial evidentiary burden, but it need not be satisfied here.

The Defendants' Motion to dismiss the equal protection claim should be denied.

### IV. The Pendent State Claims

The court will delay its decision regarding the exercise of jurisdiction over Strain's state claims pending the outcome of any Motion for Summary Judgment.

-11-

### V. **Conclusion**

For the reasons stated above, it is recommended that the Motion to Dismiss the Amended Complaint filed by the Defendants (Doc. 21 ) be granted in part and denied in part. Specifically, the Motion to Dismiss Count I of the Amended Complaint, the claim based on the Contracts Clause of the United States Constitution, should be granted with prejudice. As to Counts II and III, alleging violations of substantive due process and equal protection respectively, the Motion to Dismiss the Amended Complaint should be denied. The decision regarding whether to retain jurisdiction over the remaining state law claims should be deferred pending resolution of any Motion(s) for Summary Judgment.

In accordance with the Magistrates Act, 28 U.S.C. Section 636 (b) (1) (B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, Objections to this Report and Recommendation are due by July 14, 2006. Any Response to the Objections is due by July 24, 2006.


June 28, 2006

/s/ Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

cc:

Charles A. Lamberton, Esq.
Patricia A. Monahan, Esq.

Via electronic mail