IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HOWARD P. STRAIN, | ) | |
| | ) | Civil Action No. 04-1581 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BOROUGH OF SHARPSBURG, | ) | Judge Lancaster |
| PENNSYLVANIA, a Municipal | ) | Magistrate Judge Caiazza |
| Entity, and RICHARD C. PANZA, | ) | |
| JOSEPH P. PANZA, LARRY | ) | |
| STELITANO, EILEEN RAPINO, | ) | |
| VINCENT F. SACCO, ALBERT | ) | |
| "PAT" ASTORINO, MARIO FERRARO, | ) | |
| ROXANNE MAGNELLI, AND ROBERT | ) | |
| STAPF,in their official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

The court has addressed this matter twice before in the context of Motions to Dismiss. The Defendants now ask that the court grant summary judgment with respect to all claims set out in Howard Strain's Second Amended Complaint. These claims include the denial of substantive due process (Count I); the denial of equal protection (Count II); malicious prosecution in violation of 42 U.S.C. § 1983 (Count III); abuse of process in violation of 42 U.S.C. § 1983 (Count IV)[1]; a state claim for breach of fiduciary duty (Count V); and a state claim for breach of contract (Count VI). The Court has evaluated each of these claims against the background of the record and the law, and

_____

[1]The Plaintiff has filed a Motion for Partial Summary Judgment with respect to this claim.

respectfully recommends that the Defendant's Motion with respect
to Count II, the Equal Protection Claim, be granted as to the
individual defendants, but denied as to the Borough of
Sharpsburg.  The court further recommends that the Plaintiff's
Motion for Partial Summary Judgment(Doc. 60) be denied with
respect to Count IV, the abuse of process claim, and that the
Defendants' Motion for Summary Judgment (Doc. 64) be denied as to
Counts IV and VI, the abuse of process and state breach of
contract claims. Last, the court recommends that the Defendants'
Motion be granted with respect to all remaining claims.

## II. REPORT

### A. BACKGROUND

The Plaintiff, Howard Strain("Strain"), was hired by the
Borough of Sharpsburg ("the Borough")in 1973. Strain, who is now
in his early fifties, alleges that at about the time he became
eligible for early retirement in 2003, his unblemished thirty
years of service to the Borough came to a swift, bitter, and
unmerited end. He is convinced that his termination was effected
because "one or more of the Defendants, acting solely for
personal and/or political reasons," schemed to deprive him of his
job and his right to receive post-employment benefits. (Doc. 19
at 5).

According to Strain, the opening salvo in the vendetta
against him was fired in the summer of 2003 by newly-elected
councilman and Defendant, Larry Stelitano ("Stelitano"). During

that summer, Strain carried out the Mayor's order to dispose of
an inoperative Borough lawn tractor that had sat disabled since
1999 at the Sharpsburg water plant.[2]  The Borough no longer used
the mower, had voted twice not to repair it, and had purchased at
least one new machine. The scrap yard would not accept the mower
because it contained potentially toxic contaminants, and a local
boy scout camp also refused the machine.(Doc. 82 at 20).
Ultimately, Strain gave the inoperative mower to his cousin,
Ronald Bartholomew ("Bartholomew"), who, in an affidavit, states
that when he received it the mower was worthless, needing a new
engine and many other critical parts.(Doc. 82 at 27). Strain did
not receive compensation for the mower. Bartholomew invested
seventy hours of labor and more than $3000.00 of material in the
mower, and was able to return it to use on his Shaler lawn. (Doc.
77 at 24-25).

    Almost as soon as he took office, Stelitano began to
investigate Strain and his work, compiling a voluminous notebook
of information. He did not investigate any other Borough
employee. As part of his investigation Stelitano inquired about
the defunct mower. Strain told Stelitano that the tractor was
scrap and had been discarded. When Stelitano learned that the

---

[2]There is evidence in the record supporting Strain's contention
that Stelitano did not like him, and vowed, if elected, to have Strain
fired. *See, e.g.,* Declaration of Mark T. Gallo, former employee of the
Sharpsburg Department of Public Works. (Doc. 82 at 24-25). The basis
for the acrimony is not clear.

mower was no longer at the water plant, he notified police that the machine was missing and asked that theft charges be filed against Strain. Strain was not contacted before these charges were filed. He first learned that he had been accused of theft when he read about it in the newspaper.

Stelitano ultimately discovered that Bartholomew had restored the mower, and demanded that he pay the Borough $1500.00. Bartholomew refused, removed as many of the new mower parts as he could, and surrendered the tractor. The mower, again inoperative, was returned to the water plant and was never used again.

On December 15, Defendant Stapf, who admitted that he knew the real circumstances of the mower's "theft", (Doc. 94 at 13, 16), prepared and sent to the other members of Council a one sentence letter stating: "After reviewing the facts and circumstances involving the [lawnmower] incident with borough employee Howard Strain[,] I recommend he be suspended immediately without pay." (Doc. 94 at 13). Stapf testified that in formulating this recommendation he consulted the Personnel Rules for all Non-Civil Service Employees for the Borough of Sharpsburg, and believed that immediate suspension, rather than a less severe penalty, was warranted. At his deposition, Stapf explained his conclusion:

> Q: Now the personnel rules say that . . .[i]mmediate suspensions may only take place when the nature of an alleged infraction or breach of discipline makes it

impractical for a supervisor to allow an employee to
remain on the job, i.e., when the safety or welfare of
fellow employees, the public or the borough is affected
or when an employee refuses to perform his or her
assigned duties.
    Did you believe that that [sic] applied to Mr. Strain?

    A: Correct.

Id.

    By mid-December 2003, Stelitano had generated a 536 page

compendium of evidence gathered during his five-month

investigation of Strain's performance. (Doc. 82 at 18; Doc. 85 at

23-24). At the December Council meeting, Stelitano listed

seventeen violations of Borough rules and regulations which he

alleged had been committed during the course of Strain's job

performance. Some of these violations were based in part on

events that had occurred years before Stelitano was a member of

Council.[3] Stelitano could not explain why Strain, prior to

December 2003, had a blemish-free employment record and had never

before been reprimanded, warned, or disciplined. (Doc. 85 at 9).

_____

    [3] The rule infractions on Stelitano's list included failure to
follow up a water termination in 2002, failure to have the Borough
lawnmower repaired, failure to keep maintenance records for Borough
equipment, not having a filing system, improper backfilling of highway
construction areas since 1998, allowing Borough buildings and
equipment to remain in "deplorable" condition, failure to repair an
inlet since 1990, failure to hook up a fire hydrant, failure to open
new park benches for eleven months, failure to correct sewer
complaints between 2001 and 2003, failure to separate service lines in
1999, inability to produce "Valve Exercised" records, threatening to
retaliate against members of the Council if disciplinary action was
taken, failure to clear site and repair fencing at the water plant,
taking over a year to install public awareness markers on storm
sewers, and failure to follow up on delinquent water accounts since
1999.

5

Based on the violations described by Stelitano, the Borough Council voted to suspend Strain without pay for thirty days, from December 22, 2003 through January 30, 2004. When he was asked at his deposition why Council elected not to impose progressive discipline, Stelitano stated that he could not answer the question, because he did not know why that decision was made. (Doc. 85 at 9). Strain, who was on vacation at the time of the meeting, was informed of the suspension via letter on December 26, 2006.

In January 2004, Strain's criminal defense attorney met with Council in an attempt to salvage Strain's deteriorating relationship with the Borough. Strain's attorney took the position that the Defendants had violated Strain's due process rights, and had done so because of "unlawful political and personal animus." (Doc. 19 at 7). Stelitano responded five days later by filing forty-three additional disciplinary charges. (Doc. 85 at 6-8). On the advice of his attorney, Strain did not return to work following his suspension; the Borough placed him on unpaid leave. (Doc. 63 at 32).

In a February 2, 2004 letter from his attorneys, Strain again attempted to appease the Defendants, agreeing to abandon all claims that he might have against them in return for the payment of health care benefits and dismissal of the criminal charges. (Doc. 72 at 1). Council met on February tenth to discuss Strains's offer. On February 12, 2004, The Borough Solicitor

6

wrote to Strain's attorneys, notifying them that Council refused
to pay for health care benefits and insisted that Strain resign
effective February 2, 2004. Council also threatened four
additional disciplinary charges, bringing the eight week total to
sixty-four.(Doc. 72 at 3).

In a letter dated February 17, 2004, Strain accepted most
of the Borough's settlement terms, but adhered to his request
that he be awarded post-employment medical benefits, at least
until he reached the age of sixty-five. (Doc. 72 at 5). Five days
later, the Borough Solicitor notified Strain that Council would
not agree to continue his health benefits. Strain was also told
that Defendant Stelitano had contacted the Assistant District
Attorney to ask that the criminal complaint for theft be amended
to include a fraud charge based on Strain's failure to notify the
Borough that his son was no longer eligible for health benefits.
The Solicitor wrote: "If Mr. Strain does not agree to a
settlement, the Borough will take a vote to terminate Mr. Strain
and pursue the criminal case[,] including the fraud charge."
(Doc. 72 at 7-8).

On March 5 2004, Strain again asked that his health
insurance be continued, stating that he would reimburse the
Borough for premiums. He also asked to be paid for a total of
fifteen sick days, and offered to tender his resignation during
the week of March 8, 2004. (Doc. 72 at 9). Council did not
respond until April 1, 2004, when it informed Strain that if he

7

did not settle, he would be fired, the Borough would pursue the theft charges, and fraud charges would be filed. The dispute then subsided for a period of months.

On June 16, 2004, Strain presented paperwork to Defendant Magnelli indicating his intent to retire. He completed his portion of the Pennsylvania Municipal Retirement Board ("PMRB") application for pension benefits, and Magnelli completed the employer's portion, acknowledging that the information provided by Strain - including the last date of employment, December 27, 2003 - was correct.(Doc. 91 at 17 -19). Strain sent the completed application to the PMRB on July 8, 2004. About a week later, Defendant Magnelli contacted the PMRB, telling them that Strain's status with the Borough was uncertain, and that his pension benefits should not be calculated or paid prior to resolution of pending questions. Because of Magnelli's communication with the PMRB, Strain's benefit payments were delayed. (Doc. 80 at 21).

In September 2004, Magnelli wrote to the PMRB telling them: "At its regular meeting on September 14, 2004, the Council of the Borough of Sharpsburg made a motion, which was seconded, to terminate the employment of Mr. Howard Strain effective February 2, 2004." (Doc. 80 at 6). Strain received his first pension check from the PMRB late in October 2004, with benefits based on the February termination date rather than on what he contends was his December retirement date. (Doc. 79 at 13).

When Council voted to terminate Strain's employment, it

8

continued to deny any obligation to pay medical benefits. It also refused to pay Strain for the correct number of accumulated sick days, and, for those days that were counted, paid him at the wrong rate.

Strain filed suit in September 2004. The Defendants' Motion for Summary Judgment and Strain's Motion for Partial Summary Judgment are pending.


### B. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only where the depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[4] The mere existence of some evidence favoring the non-moving party will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. <u>Anderson v. Liberty Lobby</u>., 477 U.S. 242, 248 (1986). In analyzing the record, the court must view the facts in the light most favorable to the Plaintiff and draw all reasonable inferences in his favor. <u>McCarthy v. Recordex Serv.,</u>

---

[4]The record amassed by the Plaintiff in this matter complicates the court's task. Poor indexing, duplicative exhibits, lack of organization, infrequent record references, and the inclusion of distracting and extraneous materials detract from the clarity of his legal position.

Inc., 80 F.3d 842, 847 (3d Cir. 1996).

## C. GROUNDS FOR THE PENDING MOTION

### 1. OFFICIAL CAPACITY CLAIMS AGAINST INDIVIDUAL DEFENDANTS

The Defendants ask that the Court grant summary judgment in favor of the individual defendants with respect to the section 1983 claims against them in their official capacities. Suing these individuals in their official capacities is no different than naming the Borough multiple times in each count. A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr., 327 F.3d 572, 581 (3d. Cir. 2002). Summary judgment should, therefore, be granted in favor of the defendants as to all claims made against them in their official capacities.

### 2. FAILURE TO ESTABLISH VIOLATION OF A CONSTITUTIONAL RIGHT

"The first issue in a § 1983 case is whether a plaintiff [has established] a deprivation of any right secured by the constitution." D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1367 (3d Cir. 1992). The Defendants contend that the Plaintiff has failed to establish a violation of any of his constitutional rights and, as a result, the Defendants are entitled to summary judgment. The court will examine Strain's section 1983 claims seriatim.

10

a. **Substantive Due Process**

In support of their Motion for Summary Judgment, the Defendants argue that Strain has failed "to state any specific fundamental right allegedly denied him[,] nor has it become clear during the course of this litigation what specific fundamental liberty or property interest Plaintiff has been denied." (Doc. 66 at 8). Strain contends that in order to state a substantive due process violation, he need only show government conduct so arbitrary or oppressive as to shock the conscience; identification of an underlying deprivation of a fundamental right is not required. (Doc. 74 at 11 ). This is a misstatement of the law.

There is no independent constitutional right to be free of arbitrary and capricious government action. In order to prevail on a non-legislative substantive due process claim,[5] a plaintiff must first show that he has been deprived of a fundamental liberty or property interest within the meaning of the Fourteenth Amendment. Only if a fundamental right has been infringed will a court consider whether the infringement was the result of an egregious or "conscience shocking" abuse of government power. *See* County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006)(stating that substantive due process claims require

---

[5]There is no dispute that the acts alleged in this matter were executive in nature - pertaining to employment actions taken with respect to Strain alone.

11

plaintiff to demonstrate that arbitrary and capricious governmental act deprived him of protected interest); Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 426-27 (3d Cir. 2003)(holding that to establish a substantive due process claim, plaintiff must show violation of a protected interest); Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000) (explaining that substantive due process does not apply whenever a governmental entity deliberately or arbitrarily abuses governmental power; it applies only where the plaintiff shows a violation of a fundamental right derived from the Constitution).

Strain has not identified and the record does not establish a fundamental liberty or property interest impaired by the conduct of the Defendants. To date, the Court of Appeals for the Third Circuit has held that only property interests involving land are fundamental for purposes of substantive due process. Nicholas, 227 F.3d at 141. In Nicholas, the Court of Appeals found that a university professor's tenure at a state institution was a "wholly state-created right" and was more "closely analogous to those state-created property interests that [the] Court has previously deemed unworthy of substantive due process than to the venerable common-law rights of real property ownership . . . . [T]he federal judiciary should not become a general court of review for state employment decisions." Gikas v. Washington Sch. Dist., 328 F.3d 731, 736 (3d Cir. 2003) (quoting Nicholas, 227 F.3d at 143). The only property rights asserted by

12

Strain are rooted in state law, and cannot provide the basis for a substantive due process claim.

The range of liberty interests protected by the substantive due process clause is also circumscribed. Only fundamental rights and liberties "'deeply rooted in this Nation's history and tradition'" and "'implicit in the concept of ordered liberty'" qualify for substantive due process protection. Washington v. Glucksberg, 521 U.S. 702, 721 (1997)(internal citations omitted). See also Chavez v. Martinez, 538 U.S. 760, 776 (2003)(same). These have included the fundamental right to marry, see Loving v. Virginia, 388 U.S. 1 (1967); to have children, see Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942); to direct the upbringing of one's children, see Meyer v. Nebraska, 262 U.S. 390 (1923); to marital privacy, see Griswold v. Connecticut, 381 U.S. 479 (1965); to abortion, see Roe. v. Wade, 410 U.S. 113 (1973); to personal control of one's medical treatment, see Cruzan v. Dir., Missouri Dep't Health, 497 U.S. 261 (1990); and to bodily integrity, see Rochin v. California, 342 U.S. 165 (1952).

In an effort to bring this matter within the boundaries of governing case law, Strain cites the decision in County Concrete, 442 F.3d at 170, for the proposition that the Court of Appeals for the Third Circuit has recognized "that citizens have a fundamental right to pursue their occupations free of

unreasonable harassment by public officials." (Doc. 74 at 11).[6] The Court in County Concrete did not recognize (or even refer to) this or any other liberty interest. Instead, the Court held that allegations of governmental harassment and obstruction in connection with sand and gravel operations on a tract of real property owned by the Plaintiff were sufficient to state a substantive due process claim. This holding is irrelevant to Strain's asserted liberty interest.

Although Strain's substantive due process claim was barely adequate to survive the Defendants' Motion to Dismiss, the same is not true at this stage of the litigation. The court has methodically reviewed the record and is convinced that it is insufficient to establish the deprivation of a fundamental liberty or property interest. Because Strain has failed to satisfy the threshold showing necessary to establish a violation of substantive due process, the court does not reach the question of whether the totality of the Defendants' conduct was

---

[6] In the interest of complete analysis, the court notes that in Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204 (3d Cir. 2001), the Court of Appeals recognized a substantive due process right that does not fit neatly in the discussion of the law set out above. The Court upheld the viability of a Fourteenth Amendment due process claim where the plaintiff established that a government employer acted with deliberate indifference to the physical safety of an employee *and* the degree of indifference was such as to "shock the conscience" of federal judges. Id. at 212-13. The holding in Eddy does not have any bearing on the outcome of this matter.

sufficiently egregious to "shock the conscience."[7]

Summary Judgment should be granted in favor of the Defendants as to Count I.

### b. **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike. An equal protection claim may be maintained by a "class of one" where a "plaintiff alleges that he has been intentionally treated differently from others similarly situated." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Where no fundamental right is implicated and no suspect classification is created, a difference in treatment will be upheld as long as it is rationally related to a legitimate state interest. Marwood v. Elizabeth Forward Sch. Dist., 91 Fed. Appx. 207, 209 (3d Cir. 2004)(citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)).

In order to survive summary judgment under a "class of one" theory, a plaintiff must prove that: 1) he was treated differently from others similarly situated; 2) the difference in treatment was intentional; and 3) there was no rational basis for

---

[7]It is, however, worth noting that Strain has not cited - and the court has not located - case law from any jurisdiction finding the "shocks the conscience" standard to have been met in any remotely analogous public employment context.

the difference in treatment. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006). Strain alleged each of these requirements in his complaint, and the record with respect to each of these elements is arguably sufficient to allow the equal protection claim against the Borough to survive summary judgment.[8]  The same is not true as to the individual defendants. Because the parameters of the equal protection theory upon which Strain relies were, at best, blurry when the events underlying this matter transpired, the individual Defendants are entitled to qualified immunity.[9]

As a general rule, public officials performing discretionary functions enjoy qualified immunity from liability when their

---

[8]At trial, Strain will be required to establish that he was intentionally granted different benefits than a group of similarly situated employees. Generally,"whether persons are similarly situated is a factual issue that should be submitted to the jury." <u>Desi's Pizza</u>, 2006 WL 2460881 at 23. He will also bear the burden of showing that any rational basis offered by the Borough for any difference in treatment is not worthy of credence.

[9] The Supreme Court has held that qualified immunity under section 1983 does not extend to municipalities. *See* <u>Owen v. City of Independence</u>, 445 U.S. 622 (1980): "municipalities have no immunity from damages liability flowing from their constitutional violations...." <u>Id.</u> at 657. This is true even where the individual officers of the municipality are entitled to qualified immunity because the law that they are alleged to have violated was not clearly established at the time. *See e.g.* <u>Wilson v. Meeks</u>, 98 F.3d 1247, 1254 (10th Cir. 1996). Where, however, qualified immunity is granted to individual officers on the ground that there was no constitutional violation, the grant of qualified immunity precludes municipal liability. *See* <u>Williams v. Borough of West Chester</u>, 891 F.2d 458 ,467 (3d Cir. 1989) (explaining that "[a] municipality may be liable under [S]ection 1983 only if its [officers] violated a plaintiff's civil rights.").

conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The doctrine shields government officials from the personal costs of litigation and impact of litigation upon the proper discharge of their duties. <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987).

The availability of qualified immunity is determined using a two-step process. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end. <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2002). If, as here, evidence of a constitutional violation has been adduced, courts move to the second step of the analysis to determine whether the constitutional right was clearly established at the time of the disputed action. <u>Id.</u>

To the extent that there is clarity in the law with regard to the "class of one" theory of equal protection, this was not true during the time period covered by the arbitrary conduct alleged. The Supreme Court first articulated the "class of one" theory of equal protection in 2000 when it issued the short opinion in <u>Willowbrook</u>. Courts within the Third Circuit did not immediately address the impact of that decision in precedential opinions. In fact, the Court of Appeals did not mention <u>Willowbrook</u> or the "class of one" theory until the fall of 2004,

17

when it discussed the issue in a zoning matter, <u>Eichenlaub v. Twp. of Indiana</u>, 385 F. 3d 274 (3d Cir. 2004). As late as 2006, the Court noted that it "has not had the opportunity to consider the equal protection 'class of one' at any length." <u>Hill</u>, 455 F. 3d at 239.

Given the nascent legal status of the "class of one" theory during the period relevant to Strain's allegations, the court finds that the outlines of this right were not sufficiently clear to have put a reasonable Council member on notice that the allegedly discriminatory action implicated equal protection. Because the Defendants are entitled to qualified immunity with respect to this claim, Summary Judgment should be entered in their favor.

### c. <u>Malicious Prosecution</u>

Strain's Complaint does not specify which constitutional right underlies his claim for malicious prosecution. The brief supporting his motion for summary judgment, however, clarifies that the claim rests on the substantive due process component of the Fourteenth Amendment. This claim is not viable. In <u>Albright v. Oliver</u>, 510 U.S. 266, 270 n.4 (1994), the Supreme Court, in a plurality opinion, foreclosed section 1983 malicious prosecution claims based on Fourteenth Amendment substantive due process. "It is evident that substantive due process may not furnish the constitutional peg on which to hang such a tort." <u>Id.</u> *See also*

18

Wyatt v. Keating, 130 Fed. Appx. 511, 516 (3d Cir. 2005)(quoting Albright in support of proposition that section 1983 malicious prosecution claims cannot rest on Fourteenth Amendment substantive due process); Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000) (stating: "a violation of substantive due process is no basis for a malicious prosecution claim brought pursuant to section 1983"); Benckini v. Coopersburg Police Dept., No. Civ. A. 03-3671, 2004 WL 1686954 * 4 (E.D. Pa. July 27, 2004) (holding that to sustain civil action for malicious prosecution under section 1983, plaintiff must show deprivation of constitutional right other than substantive due process)(citing Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998) and Gallo v. City of Phila., 161 F.3d 217, 222, 225 (3d. Cir. 1998)).

The Defendants' Motion for Summary Judgment should be granted with respect to Strain's section 1983 claims based on malicious prosecution.

### d. **Abuse of Process**

In Pennsylvania, an action for abuse of process "lies where prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by the law." Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989). A claim for abuse of process may be brought pursuant to section 1983 provided that the it includes the elements of the common law tort. McArdle v. Tronetti, 961 F.2d 1083, 1088 (3d Cir. 1992). Pennsylvania law

regarding abuse of process is consistent with the Restatement
(Second) of Torts § 682 at 475 comment b. (1977), which explains:

> [T]here is no action for abuse of process when
> the process is used for the purpose for which it
> is intended, but there is an incidental motive of
> spite or an ulterior motive . . . . For abuse of
> process to occur there must be use of the process
> for an immediate purpose other than that for which
> it was designed and intended. The usual case of
> abuse of process is one of some form of extortion,
> using the process to put pressure upon the other
> to compel him to pay a different debt or to take some other
> action or refrain from it. . . .

*See also* <u>Rosen v. Tesoro Petroleum Corp.</u>, 582 A.2d 27, (33 Pa.
Super. 1990).

The essence of Strain's claim is that the Defendants pursued
and threatened to pursue theft charges filed against him, not to
recover property or to hold him accountable, but in order to
force him to resign and thereby forfeit benefits to which he
would otherwise have been entitled.

The Defendants argue that this claim fails because Strain
has failed to show that he was deprived of a constitutional
right; he has not introduced evidence of a contract that
supplanted his status as an at will employee. This argument
misapprehends the crux of Strain's alleged property right.
Although Strain repeatedly and imprecisely uses the term
"employment contract" to allege a property right, he does not
contest his status as an at will employee. His focus, rather, is
on the Borough's obligation to provide him with benefits earned

20

and vested during the thirty years that he was an at-will
employee - compensation for unused sick leave, accumulated
vacation days, and continued health care coverage.

State law makes clear that Strain's status as a non-
contractual at-will employee does not preclude his argument that
there was a contract governing the payment of benefits at the
time of retirement or termination. See Sullivan v. Chartwell
Investment Partners, LP, 873 A. 2d 710 ( Pa. Super. 2005).

In Perry v. Sinderman, 408 U.S. 593 (1972), the Supreme
Court held that "mutually explicit understandings that support
[a] claim of entitlement" may give rise to a property interest
having its source in state law. Id. at 601. Strain identifies
four categories of evidence in the record to support the
existence of such an understanding. He cites first two benefit
summaries - one undated and one dated 1989 - given to him by the
Borough. Each summary states that post-retirement hospitalization
will be paid during the life of the employee, for both the
employee and his spouse. (Doc 68 Ex. C and D). Second, he points
to the April 8, 2002 Sharpsburg Borough Municipal Employee
Pension Plan Agreement made between the Borough and the
Pennsylvania Municipal Retirement Board. (Doc. 69 Ex. E at 2).
Paragraph Five of that Agreement, captioned "Early Retirement"
provides: "A member who has been involuntarily terminated after

21

eight (8) years of credited service may retire early . . . ."
This policy suggests that an employee who has been terminated,
may, nonetheless, be entitled to retire. Third, the Borough
acknowledges that it has an unwritten policy of providing health
care benefits to "retirees who reach 'normal' retirement age."
(Doc. 84 at 1). Finally, Strain testified at his deposition - and
there is other evidence in the record - that a number of Borough
retirees were awarded health care benefits upon retirement even
through they had not yet reached the age of sixty-five. According
to Strain, had it not been for the arbitrary action taken by the
Council and the element of coercion inherent in the alleged abuse
of process, there would be no question that he was entitled to
retire - in fact, had retired - and was due the same post-
employment benefits as those provided to other Borough retirees.

The court is convinced that the evidence in the record with
respect to the abuse of process claim is sufficient to suggest
that there was a manipulation of the legal process that was
deliberately engineered to deprive Strain of post-employment
benefits.[10]

---

[10]Qualified immunity is not available with respect to this claim.
The contours of the law regarding abuse of process are well
established, and were not subject to any ambiguity at the time of the
events in question. The grounds for municipal liability in this
context are also well established.
    Municipal liability may rest on a single decision made by an
official having final policy-making authority with respect to that
decision. Pembaur v. Cincinnati, 475 U.S. 7 01 (1986). In other words,
"[p]olicy is made when a decision maker possessing final authority to

The Defendants' Motion for Summary Judgment and Strain's Motion for Partial Summary Judgment should be denied as to the claim for abuse of process.[11]

─────────────────────

establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)(citation omitted).

Municipal liability has been imposed in the employment context where the decision maker "was at the apex of authority for the action in question." Gernetzke v. Kanosha Unified School Dist. No. 1, 274 F.3d 464, 468–69 (7th Cir. 2001). In this case, state law places the Borough Council at the apex of decision-making authority with respect to all decisions relevant to Strain's employment. Borough councils are charged with "fix[ing] the compensation of all of borough appointed officers and employees," 53 Pa. Cons. Stat. Ann. § 46006, establishing hours and days of work, and restricting the outside employment. Id. at § 46101.  Councils are also vested with the authority to terminate employees such as Strain for cause, or for no reason at all."All officers and employees appointed by the council, with the exception of those . . . under civil service or hav[ing] a definite term of office, shall serve for an indefinite term at the pleasure of the council." Id. at § 46005. Where a council makes a decision in an area where the law vests it with final authority to act, that decision constitutes policy for purposes of Section 1983. Proof of pattern and custom is, in this circumstance, unnecessary.

[11]Although the court concludes that Strain has adduced enough evidence to survive summary judgment on this claim, the underlying facts are not so clearly established that he, himself, is entitled to summary judgment. Whether Strain will be able to show the deprivation of property on which the abuse of process claim depends will turn on credibility judgments that can only be made at trial. Many of the facts surrounding the filing, processing, and disposition of the theft charges are unclear. Whether all of the Defendants participated in the alleged abuse of process is also unclear. Furthermore, the evidence cited by Strain in support of his claim to health care benefits does not necessarily bear on his right to payment for accumulated vacation and sick days. The record as it stands does not show that others received these benefits, nor does it provide any means for calculating what Strain alleges that he was owed or the basis for that calculation. The court's decision with regard to summary judgment does not say that Strain has won the battle; it says instead that he is entitled to continue to fight.

### 3. <u>THE STATE CLAIMS</u>

In the interst of efficiency and judicial economy, the court should exercise its discretion to assume supplemental jurisdiction over Strain's state claims pursuant to 28 U.S.C.A. 1367.

### a. <u>Breach of Contract</u>

There is substantial overlap between this claim and the federal claim for abuse of process. For the reasons set out in the discussion of abuse of process, the Defendants' Motion for Summary Judgment should be denied as to the contract claim.

### b. <u>Breach of Fiduciary Duty</u>

Strain argues that the Defendants are liable for breach of the fiduciary duty owed to him as a member of the public. The authority that he cites both for the existence of the duty and his right to redress for its alleged violation does not apply to the facts of this case. Strain relies on cases involving taxpayer suits brought to enforce the duty of a public body to act with good faith, fidelity, and integrity, see, e.g., <u>Schwartz v. Urban Redevelopment Authority</u>, 192 A.2d 371, 374 (Pa. 1963), and government "prosecution of state and local officials and government employees for depriving the citizens they serve of

24

their right to honest services", <u>U.S. v. Antico</u>, 275 F.3d 245, 261 (3d Cir. 2001). He also attempts to bring this matter within the bounds of Pennsylvania case law addressing fiduciary duty in the context of a "confidential relationship."  Although it is true that those cases do not "define precisely what constitutes a confidential relation," they explain that such a relationship typically arises "between trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent." <u>Young v. Kaye</u>, 443 Pa. 335, 279 A.2d 759, 763 (1971). Strain does not identify - and the court has not located - any authority recognizing a confidential relationship between a public employer and an at will public employee.

Because Strain has failed to demonstrate a breach of fiduciary duty owed to him as an individual, summary judgment should be granted in favor of the Defendants.


### III. <u>CONCLUSION</u>

For the reasons detailed above, it is recommended that both the Defendants' Motion for Summary Judgment (Doc. 64)and the Plaintiff's Motion for Partial Summary Judgment (Doc. 60) be denied as to Count IV, the abuse of process claim. The Defendants' Motion should also be denied as to Count II, the

equal protection claim, but only insofar as that claim pertains to the Borough of Sharpsburg, and as to and Count VI, the state breach of contract claim. It is recommended that the Defendants' Motion for Summary Judgment (Doc. 64) be granted with respect to all remaining claims.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b) (1) (B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by May 11, 2007. Responses to objections are due by May 21, 2007.

 April 26, 2007.


                                        /S/ Francis X. Caiazza
                                        Francis X. Caiazza
                                        U.S. Magistrate Judge

cc:


Counsel of Record
Via electronic mail